IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| THE WILDERNESS SOCIETY, et al., <br><br> Plaintiffs, <br><br><br> vs. <br><br><br> KANE COUNTY, UTAH, et al., <br><br> Defendants. | ORDER <br><br> AND <br><br> MEMORANDUM DECISION <br><br><br> Case No. 2:05-CV-854 TC |

In 2005, Kane County passed Ordinance No. 2005-03 ("the Ordinance"). The Ordinance opened a large stretch of federal land located in Kane County ("the land") to off-road vehicle ("ORV") use. The land had previously been closed to ORV use by federal land managers. According to Kane County, it had the right to change the classification of the land and post open signs because it and the State of Utah have acquired rights-of-way on the land that have become part of the county road system, which is jointly owned and managed by Kane County and the State of Utah.

In response to Kane County's actions, two environmental organizations, the Wilderness Society and Southern Utah Wilderness Alliance (collectively "TWS"), brought this lawsuit against Kane County and members of Kane County's Board of Commissioners (collectively "the County") claiming that the Ordinance is preempted by various federal laws and regulations and therefore violates the Supremacy Clause of the United States Constitution. TWS seeks a declaration that the Ordinance is unconstitutional and an order enjoining the County from

opening the land to ORV use.

The case is before the court on two motions: (1) the County's motion to dismiss the complaint; and (2) TWS's motion to amend the complaint to add two federal agencies as defendants and one cause of action under the Endangered Species Act against the federal agencies.

At the heart of the County's Motion is its contention that TWS is "seek[ing] to eject Kane County and the State of Utah [who is not a party to the lawsuit] from ownership and jurisdiction of public roads [in Kane County]. The relief requested is the functional equivalent of a legal action to quiet title." (Defs.' Mem. Supp. Mot. to Dismiss at 15.) Based on this contention, the County argues that the court does not have subject matter jurisdiction. The County also argues that TWS does not have standing to bring this action. The County raises essentially the same arguments in its opposition to TWS's Motion to Amend the Complaint.

The court disagrees with the County's basic contention primarily because the County has yet to prove that either it or the State of Utah has any right-of-way on the land. Moreover, the court need not make an ownership determination in order to address the Plaintiffs' claims. Accordingly, the court denies the County's motion to dismiss the complaint and also grants TWS's motion to amend the complaint.

## FACTUAL BACKGROUND

There are many acres of federal public land in Kane County. The Bureau of Land Management ("BLM") manages about 1.6 million acres of the land and the National Park Service about 400,000 acres. Federal land managers have closed some of the land to ORV travel.

In August 2005, the County passed the Ordinance, titled "Ordinance to Designate and

2

Regulate the Use of Off-Highway Vehicles . . . ."  (Kane County Ordinance 2005-3, attached as

Ex. 2 to Defs.' Mem. Supp.)  In the Ordinance, "the County claims the right and ownership of all

Class B and Class D roads designated on the County Road System" and "has designated all Class

B and Class D roads as open, unless designated closed to off-highway vehicle (OHV) use . . . ."

(Id.)  The basis for the County's assertion of ownership in the roads is the federal statute known

as "R.S. 2477."  See Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253, codified at 43 U.S.C.

§ 932 ("R.S. 2477"), repealed by Federal Land Policy & Management Act of 1976, Pub. L. No.

94-579 § 706(a), 90 Stat. 2743.  See also Southern Utah Wilderness Alliance v. BLM, 425 F.3d

735 (10th Cir. 2005) (describing background and history of R.S. 2477).  TWS alleges that even

before the County passed the Ordinance, the County had removed BLM signs restricting ORV

travel on the land and replaced the BLM signs with County signs indicating that the posted routes

are open to ORV use.

## ANALYSIS

### A.   Defendants' Motion to Dismiss

The County's Motion is primarily a motion to dismiss for lack of subject matter

jurisdiction brought under Federal Rule of Civil Procedure 12(b)(1).[1]  The County also brings its

---

[1]The parties disagree about the proper standard to be applied in this case. TWS contends
that Rule 12(c) is applicable rather than Rule 12(b).  TWS further contends that the court must
convert the motion to dismiss to a motion for summary judgment under Rule 56.  But see Holt v.
United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995) ("When reviewing a factual attack on
subject matter jurisdiction [under Rule 12(b)(1)], a district court may not presume the
truthfulness of the complaint's factual allegations" but consideration of "evidence outside the
pleadings does not convert the motion to a Rule 56 motion.").  Because there is very little dispute
about the controlling facts, the parties' disagreement about the proper standard is of little
consequence.

motion under Rule 12(b)(7), contending that the complaint must be dismissed because TWS has failed to join the State of Utah, an allegedly indispensable party.

      1.      The Supremacy Clause

TWS alleges that the Ordinance violates the Supremacy Clause because it conflicts with and has been preempted by federal laws that regulate ORV use on federal land.  According to TWS, a suit claiming violation of the Supremacy Clause raises a federal question and this court has subject matter jurisdiction based on 28 U.S.C. § 1331.  The County contends that the suit is in essence a quiet title action over which the court does not have subject matter jurisdiction.

The Supreme Court has made clear that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights:  "A Plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."  Shaw v. Delta Airlines, Inc., 463 U.S. 85, 96  n.14 (1983).  More recently, in Verizon Maryland Inc. v. Public Service Comm'n of Maryland, 535 U.S. 635 (2002), the Court stated that "[w]e have no doubt that federal courts have jurisdiction under § 1331 to entertain such a suit [alleging violation of the Supremacy Clause]."  Id. at 642.

Similarly, in Qwest Corp. v. City of Santa Fe, New Mexico, 380 F.3d 1258 (10th Cir. 2004), Qwest brought suit challenging an ordinance enacted by the City of Santa Fe that established new procedures for telecommunications providers seeking access to city-owned rights-of-way.  380 F.3d at 1262.  Qwest was seeking a declaration that the ordinance was preempted by state and federal laws, and an injunction to prevent the enforcement of the

ordinance.  Id.  Relying on Shaw and Verizon, the Tenth Circuit rejected the City's argument that there was no federal subject matter jurisdiction, holding that Qwest's claim of preemption provided federal question jurisdiction.  Id. at 1264.  Further, the court made clear that it was not the federal law that Qwest contended preempted the City's ordinance that gave rise to the right of action, but the Supremacy Clause itself.  Id. at 1266.  See also ANR Pipeline Co. v. Corp. Comm'n of Oklahoma,  860 F.2d 1571, 1576 (10th Cir. 1988) ("Federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights."); Planned Parenthood of Houston & S.E. Texas v. Sanchez, 403 F.3d 324, 331 (5th Cir. 2005) (listing cases).

   2. Eleventh Amendment

  There is no dispute that the County, by itself, is not entitled to the protection of the Eleventh Amendment   Alden v. Maine, 527 U.S. 706, 756 (1999) (noting that Eleventh Amendment immunity "does not extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State").  But the County contends that this case must be dismissed because it is, in reality, a suit against the State of Utah, which is purportedly the owner of the roads at issue in the Ordinance passed in reliance on R.S. 2477. But, other than conclusory assertions, the County has not provided any evidence that either it or the State of Utah has acquired R.S. 2477 rights-of-way over the land.  In fact, the County has admitted that there has been no binding judicial determination regarding R.S. 2477 rights-of-way on the land.

  Still, the County contends that it need do nothing more than it has already done. According to the County, "[t]he idea that the State and County do not own property rights until adjudication has been conclusively rejected by the Tenth Circuit Court of Appeals."  (Defs.'

Reply at 2.)  Relying on the Tenth Circuit's decision  in <u>Southern Utah Wilderness Alliance v.</u>

<u>BLM,</u> 425 F.3d 735 (10th Cir. 2005), the County maintains that

> [t]he State and Counties are free to use and enjoy their roads, including
> performing routine maintenance of the same, without prior adjudication or federal
> permission.  The basic holding in [<u>Southern Utah Wilderness Alliance</u>] is that
> rights-of-way are valuable property rights that counties are free to continue to use,
> manage and enjoy pursuant to their lawful governmental power, without seeking
> prior permission . . . .  Only if the surface or path of a road right-of-way is to be
> improved must there be a consultation with the federal land manager.

(Defs.' Reply at 3 (internal citations omitted).)  The County continued its argument by stating

that

> [t]his court is well aware of Plaintiffs' recent unsuccessful attempt to create a
> prior-determination requirement in R.S. 2477 jurisprudence. [This] idea . . . has
> been conclusively rejected by the Tenth Circuit Court of Appeals.  "Title to an
> R.S. 2477 right of way . . . passes without any procedural formalities and without
> any agency involvement."

(<u>Id.</u> at 2-3 (quoting <u>Southern Utah Wilderness Alliance</u>, 425 F.3d at 753).)

But the language quoted by the County must be read in context.  When the Tenth Circuit

made the quoted statement, it was answering "the question of whether the district court should

have treated this dispute as an appeal of an informal, but legally binding, administrative

adjudication, or instead should have treated it as a de novo legal proceeding."  <u>Southern Utah</u>

<u>Wilderness Alliance</u>, 424 F.3d at 749.  The BLM argued that it had authority to determine the

validity of R.S. 2477 claims, thereby limiting judicial review.  The Tenth Circuit disagreed and

distinguished the case relied upon by the BLM, which dealt with patents on a mining claim.  The

court pointed out that there were fundamental differences between mining claims, where title

passes by way of a patent issued by the BLM, and R.S. 2477 rights-of-way, where the BLM plays

no such role.  <u>Id.</u> at 754-55.

The issue here is quite different.  This dispute raises the question whether the court should accept the County's claim that it has R.S. 2477 rights-of-way on the land without evidence supporting the claim.  Even the case relied upon by the County does not support this contention.  In <u>Southern Utah Wilderness Alliance</u>, the Tenth Circuit discussed at length "the criteria governing recognition of a valid R.S. 2477 right of way."  <u>Id.</u> at 768.  First, the court emphasized that the party seeking to enforce rights-of-way against the federal government bears the burden of proof.  <u>Id.</u>  Then the court explained that "this allocation of the burden of proof to the R.S. 2477 is consonant with federal law and federal interests."  <u>Id.</u> at 769.  Finally, the court directed that "[o]n remand, therefore, the Counties, as the parties claiming R.S. 2477 rights, bear the burden of proof."  <u>Id.</u>

Certainly the County could defend the legality of the Ordinance by attempting to meet its burden to show that it has acquired R.S. 2477 rights on the land.  But that has not happened.  All the County has done is claim that it has R.S. 2477 rights and assert in its answer to the complaint that it will rely on R.S. 2477 rights as a defense.  Therefore, as the litigation now stands, the County has not shown that the State of Utah and the County have an interest in the land.

Finally, the County's argument that this lawsuit is really an action to strip the State of Utah of interests in the land ignores the fact that none of the relief sought by TWS applies to the State of Utah in any way.  TWS is seeking a declaration that the Ordinance is unconstitutional and that the County's action in removing federal signs on the land is unconstitutional.  TWS further seeks an order directing the County to remove its signs from the land.  Finally, TWS has asked the court to enjoin the County from taking any additional action purporting to open the land to ORV use.  TWS correctly stated that

this Court need not make any final determination regarding the existence of any R.S. 2477 right-of-way in order to grant TWS's requested relief.  It need only determine that the County's ordinance and other actions are preempted by federal law where the County has not made the slightest effort to demonstrate—let alone successfully proven—the existence of even a single right-of-way on the federal land in question.  This conclusion need not rest on a determination regarding the veracity of any claims the County might have.  Rather, the Court need only recognize that the presumption on federal land is that ownership and management authority lies with the federal government and that any adverse claimant, like the County here perhaps, is not entitled to win title or exercise unilateral management authority until it successfully has carried its burden of proof in a court of law.

(Pls.' Mem. in Opp'n at 13-14.)  This is not an action against the State of Utah, but an action against the County, which is not, by itself, entitled to sovereign immunity.  The County's motion to dismiss based on the ground of sovereign immunity is denied.

3.   Indispensable Party

The County also contends that the State of Utah is an indispensable party.  The court disagrees.

Underlying the County's contention is the assumption that the State of Utah has an interest in this suit because TWS allegedly is attempting to strip the State of Utah's legal interest in R.S. 2477 rights-of-way on federal lands in the County.  The County, however, presents no evidence that the County or State of Utah has any established R.S. 2477 rights on the federal lands in question.  Absent such evidence, the County cannot carry its burden under Rule 19 to prove that the State of Utah is a necessary, much less indispensable, party.  See Rishell v. Jane Phillips Episcopal Memorial Med. Ctr., 94 F.3d 1407, 1411 (10th Cir. 1996) (party seeking dismissal on ground that absent party is indispensable bears burden of persuasion).  Furthermore, TWS's complaint does not necessarily implicate title in any R.S. 2477 right-of-way.  And even if the State of Utah's interests would somehow be impaired by TWS's suit, joinder is not required

where the County for all practical purposes fully represents the State of Utah's interests.  See,

e.g., Kansas v. United States, 249 F.3d 1213, 1227 (10th Cir. 2001) (finding potential for

prejudice "largely nonexistent" where interests of parties to litigation were "substantially similar,

if not identical" to those of absent party, and therefore rejecting absentee's case that it was

necessary and indispensable party); Sac & Fox Nation of Missouri v. Norton, 240 F.3d 1250,

1259 (10th Cir. 2001) (rejecting contention that absentee was indispensable party where existing

party's "interest in defending his determinations [was] 'virtually identical' to the interests of the

[absentee]").

       For the foregoing reasons, the County's motion to dismiss for failure to join an

indispensable party is denied.

       4.       Utah Governmental Immunity Act

       The County also contends that it is protected from this lawsuit by the Utah Governmental

Immunity Act (UGIA).  This argument requires little analysis because the law is well settled that

a state immunity statute cannot protect conduct that is alleged to be a constitutional violation.

"'To the extent that the [Utah] law of sovereign immunity reflects a substantive disagreement

with the extent to which governmental entities should be held liable for their constitutional

violations, that disagreement cannot override the dictates of federal law.'"  Ambus v. Granite Bd.

of Educ., 995 F.2d 992, 995 (10th Cir. 1993) (quoting Howlett v. Rose, 496 U.S. 356, 377-78

(1990)).  See also Felder v. Casey, 487 U.S. 131, 146-53 (1988) (holding that state notice-of-

claim statute did not apply to § 1983 civil rights claim); Barney v. Gillespie, 813 F. Supp. 1537,

1547 (D. Utah 1993) ("the Utah Governmental Immunity Act notice requirement is not a bar to

plaintiffs' federal claims" under § 1983) (citing Felder v. Casey, 487 U.S. 131 (1988)); Bennett

v. Bow Valley Dev. Corp., 797 P.2d 419, 424 (Utah 1990) (holding that Utah Governmental

Immunity Act did not apply to constitutional takings claim under self-executing provision of

Utah Constitution or Fifth Amendment of the United States Constitution).  Moreover, if the court

were to accept the County's assertion of immunity under the UGIA, such a holding would be

completely contrary to the established federal rule that the Eleventh Amendment only provides

immunity to states, not lesser entities like the County.  Alden, 527 U.S. at 756.  There is simply

no merit to the County's assertion.  Because TWS alleges that the County has violated the

Supremacy Clause of the United States Constitution, the UGIA is plainly inapplicable here.

     5.    <u>TWS's Standing</u>

The County takes the position that TWS has no Article III or prudential standing to bring

this action.  To establish Article III standing, TWS must show an "injury in fact," a "causal

connection between the injury and the conduct complained of," and the likelihood that a

favorable ruling would redress the injury.  Colorado Envtl. Coalition v. Wenker, 353 F.3d 1221,

1234 (10th Cir. 2004).

In response to the County's assertion that TWS has not established Article III standing,

TWS points to various member declarations stating that the TWS members have an interest in,

and use and enjoy, federal public lands in Kane County that will be harmed by the increased

ORV use permitted by the County's actions.  TWS's members state that they will refrain from

using areas where increased ORV use can occur and, to the extent they do revisit the areas, their

conservation, aesthetic, and other interests will be harmed.  These statements plainly satisfy the

injury prong of the standing test.

The County argues that TWS "cannot challenge the existence of these public roads"

because they "have failed to assert that they, or their members, own a property interest in either the federal lands . . . or an interest in . . . Kane County's roads." (Defs.' Mot. to Dismiss at 37-38.) The County is apparently referring to the fact that TWS allegedly would lack standing to bring a Quiet Title Act claim to resolve a title dispute on the challenged routes. The court disagrees because, as noted above, TWS is not seeking to quiet title in itself or any other entity.

As for the causal connection requirement, TWS's injury is directly traceable to the County's actions in opening up lands to ORV use that were closed to such use by federal land managers. According to TWS, the BLM and other federal land management agencies closed those routes and areas to ORVs precisely because they concluded that ORVs would cause environmental damage on those lands. TWS has established a sufficient connection between the injury and the conduct that TWS seeks to have declared invalid and enjoined. For the same reasons, TWS's injury is redressable by the court.

The County's contention regarding TWS's prudential standing overlooks the fact that TWS need not show prudential standing in this case. "[A]n entity does not need prudential standing to invoke the protection of the Supremacy Clause[.]" Pharmaceutical Research & Mfrs. of America v. Concannon, 249 F.3d 66, 73 (1st Cir. 2001), aff'd sub nom. Pharmaceutical Research & Mfrs. of America v. Walsh, 538 U.S. 544 (2003); see also Taubman Realty Group Ltd. P'ship v. Mineta, 320 F.3d 475, 481 n.3 (4th Cir. 2003) (plaintiff "does not have to meet the additional standing requirement involving the zone of interests test with respect to its Supremacy Clause claim against the County"); St. Thomas–St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands, 218 F.3d 232, 241 (3d Cir. 2000) ("We know of no governing authority to the effect that the federal statutory provision which allegedly preempts enforcement of local

11

legislation by conflict must confer a right on the party that argues in favor of preemption.").  This is so because when a preemption-based challenge is brought under the Supremacy Clause, it is the interests protected by the Supremacy Clause, not those protected by the preempting statute, that are at issue.  Because the plaintiffs in a Supremacy Clause suit seek to uphold the primacy of federal law – the very purpose of the Supremacy Clause – there is no need for them to fulfill any additional prudential standing test.

For the foregoing reasons, TWS has standing to bring its claims.[2]

**B.**     **Plaintiffs' Motion to Amend the Complaint**

TWS filed a Motion to Amend the complaint to add a claim under the Endangered Species Act (ESA), 16 U.S.C. § 1531 et seq., against the BLM and U.S. Fish and Wildlife Service (FWS) based on the same set of facts alleged in the original complaint.  The BLM and FWS are not currently defendants.  TWS does not seek to add any claims against the County.

Leave to amend a complaint shall be freely granted when justice so requires. Fed. R. Civ. P. 15(a).  Indeed, denial of leave to amend is justified only in limited circumstances:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962) (emphasis added).

The County opposes the motion to amend on the ground that granting such an amendment

---

[2]The County alleges that TWS's claims are not ripe.  But TWS challenges County actions that have occurred, are completed, and have ongoing impacts.  Consequently, TWS's Supremacy Clause claims are ripe for review.

would be futile, and, in support of its opposition, the County repeats the arguments presented in its Motion to Dismiss.  The County provides no other reason for denial.  Because the court has denied the County's Motion to Dismiss, and because no valid reason has been given for denying the request to amend, the Plaintiffs' Motion to Amend is GRANTED.

## ORDER

For the foregoing reasons, the Defendants' Motion to Dismiss is DENIED.  Plaintiffs' Motion to Amend the Complaint is GRANTED.

DATED this 24th day of August, 2006.

BY THE COURT:

TENA CAMPBELL
United States District Judge

13