IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| THE WILDERNESS SOCIETY and SOUTHERN UTAH WILDERNESS ALLIANCE,<br><br>                    Plaintiffs,<br><br><br>          vs.<br><br><br>KANE COUNTY, UTAH, a Utah political division, et al.,<br><br>                    Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:05-CV-854-TC |

The Wilderness Society and Southern Utah Wilderness Alliance (collectively "TWS") challenge Kane County's actions[1] opening a portion of federal land in the County to off-road vehicle (ORV) use.  Some of the federal land has been closed to ORV use by the United States Bureau of Land Management (BLM) and the National Park Service (NPS).  TWS claims that the County's actions (enacting Ordinance No. 2005-03, posting County road signs, and removing federal agency road closure signs) violate the Supremacy Clause of the U.S. Constitution and are pre-empted by various federal laws and regulations.

This matter comes before the court on TWS's Motion for Summary Judgment.  TWS seeks a declaration that the ordinance is unconstitutional and an order enjoining the County and its Commissioners from opening the land to ORV use.

---

[1]TWS sues Kane County and its County Commissioners in their official capacities.

The County opposes the motion, contending that it has valid existing rights in the roads on federal land and that such rights take precedence over federal road closures.  Specifically, the County contends it has the right to change the classification of the land because it has acquired rights-of-way on the land under a federal statute referred to as R.S. 2477.

The court disagrees that the County currently has valid existing rights under R.S. 2477 for the areas in question, because the County has yet to establish the validity of those rights in a court of law.  And although the County seeks to establish the validity of those rights here (it filed a motion to stay under Rule 56(f) and a motion for partial summary judgment that is not yet fully briefed), this case is not the proper forum for such a determination.  First, the County has not filed a quiet title action in this case, and, second, even if it had done so, TWS is not the proper party to sue for quiet title.

Consequently, the County's actions, unsupported by any valid existing right under R.S. 2477, are preempted by the Supremacy Clause because they create an obstacle to the accomplishment and execution of Congress's land management objectives, as carried out by BLM and NPS.  For these reasons, and as set forth more fully below, TWS's Motion for Summary Judgment is GRANTED.

## I.  PROCEDURAL BACKGROUND

Plaintiffs are non-profit environmental organizations whose missions include wilderness preservation.  They filed this suit on behalf of their members who use and enjoy the land at issue in this suit.[2]

---

[2]The court has already held that the Plaintiffs have standing.  See Wilderness Soc'y v. Kane County, 470 F. Supp. 2d 1300, 1308 (D. Utah Aug. 2006).  That ruling stands, even in light

In their First Amended Complaint, they allege in their first cause of action that Kane County's sign posting and removal of BLM road closure signs, as well as enactment of the 2005 Ordinance, violate the Supremacy Clause by opening closed areas of BLM land to ORV use.  In their second cause of action, they allege that the 2005 Ordinance violates the Supremacy Clause by opening closed areas on National Park Service lands to ORV use.

A.    **The Court's Denial of Kane County's January 2006 Motion to Dismiss**

In January 2006, in response to TWS's complaint, Kane County moved to dismiss on various grounds,[3] including the claim that under the federal statute known as "R.S. 2477,"[4] the County (and non-party State of Utah) owned rights-of-way to all the routes that were signed or opened to ORV use and so the County had valid existing rights that federal agencies could not extinguish through administrative road closures.  According to the County, TWS's suit was in essence a quiet title action over which the court did not have subject matter jurisdiction.  (See Defs.' Mem. Supp. Mot. Dismiss (Dkt # 30) at 2 (contending that Plaintiffs improperly sought "to use equity in lieu of a quiet title action").)  The County contended that if the court granted the relief sought by TWS, the result would be "to eject Kane County and the State of Utah from

---

of Kane County's renewed argument in its opposition brief that TWS lacks standing.  Because the court held in an earlier order that the case was not moot (see Pt. I.B, infra), the standing issue is settled.  See, e.g., Nova Health Sys. v. Gandy, 416 F.3d 1149, 1154-55 (10th Cir. 2005) (noting that standing is determined by circumstances at the outset of the litigation, that standing cannot be "lost" in the middle of an action, and that standing is an issue distinct from mootness).

[3]See Docket Entry No. 27.

[4]See Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253, codified at 43 U.S.C. § 932, repealed by Federal Land Policy & Management Act of 1976 (FLPMA), Pub. L. No. 94-579 § 706(a), 90 Stat. 2743.  See also Southern Utah Wilderness Alliance v. BLM, 425 F.3d 735 (10th Cir. 2005) (describing background and history of R.S. 2477).

ownership and jurisdiction of public roads in Kane County." (Id.)

In the court's August 24, 2006 Order,[5] the court denied Kane County's motion, holding, in pertinent part, that:

> this Court need not make any final determination regarding the existence of any R.S. 2477 right-of-way in order to grant TWS's requested relief. It need only determine that the County's ordinance and other actions are preempted by federal law where the County has not made the slightest effort to demonstrate—let alone successfully proven—the existence of even a single right-of-way on the federal land in question. This conclusion need not rest on a determination regarding the veracity of any claims the County might have. Rather, the Court need only recognize that the presumption on federal land is that ownership and management authority lies with the federal government and that any adverse claimant, like the County here perhaps, is not entitled to win title or exercise unilateral management authority until it successfully has carried its burden of proof in a court of law.

Wilderness Soc'y v. Kane County, 470 F. Supp. 2d 1300, 1306 (D. Utah 2006) (quoting TWS's brief).

The court based its ruling, at least in part, on a 2005 Tenth Circuit decision setting forth the procedure for establishing the validity of claimed R.S. 2477 rights-of-way.

> This dispute raises the question whether the court should accept the County's claim that it has R.S. 2477 rights-of-way on the land without evidence supporting the claim. . . . In [Southern Utah Wilderness Alliance v. BLM, 425 F.3d 735 (10th Cir. 2005)], the Tenth Circuit discussed at length "the criteria governing recognition of a valid R.S. 2477 right of way." [SUWA v. BLM, 425 F.3d at 768.] First, the [Court of Appeals] emphasized that the party seeking to enforce rights-of-way against the federal government bears the burden of proof. Id. Then the [Court of Appeals] explained that "this allocation of the burden of proof to the R.S. 2477 is consonant with federal law and federal interests." Id. at 769.

Wilderness Soc'y, 470 F. Supp. 2d at 1305-06. Further, although the Tenth Circuit noted in SUWA v. BLM that "[t]itle to an R.S. 2477 right of way . . . passes without any procedural

---

[5]Docket Entry No. 70.

formalities and without any agency formality," it also noted "the established rule that land grants are construed favorably to the Government, that nothing passes except what is conveyed in clear language, and that if there are doubts they are resolved for the Government, not against it." SUWA v. BLM, 425 F.3d at 753, 796 (internal citations and quotation marks omitted).  To that end (and as noted above), the Court of Appeals held that the R.S. 2477 claimant bears the burden of proof, in a court of law, to show that its claim to the right-of-way is valid.  See id. at 755, 757, 757 n.12, 758, 769 (noting that courts are the final arbiters of whether R.S. 2477 claims are valid).  See also Kane County v. Kempthorne, 495 F. Supp. 2d 1143, 1155 (D. Utah 2007) (interpreting SUWA v. BLM to "plainly" hold "that the final, binding determination of the Counties' R.S. 2477 right-of-way claims is a matter for the courts, not the BLM").

In this case, Kane County presents claims of R.S. 2477 rights-of-ways.  Accordingly, the court has proceeded, and continues to proceed, with its analysis based on the understanding that Kane County has not presented evidence of any court adjudication that any of its claimed R.S. 2477 rights-of-way is valid.

**B.    The Court's Denial of Kane County's May 2007 Motion to Dismiss**

In May 2007, the County again moved to dismiss,[6] this time on the basis that TWS's claims were moot.  According to the County, the claims were moot because the County (1) rescinded the Ordinance on December 11, 2006, (2) removed all OHV decals from Kane County road numbering signs on state and federal land, (3) returned the BLM road closure signs to the agency, and (4) swore in an affidavit that the County had no intention of removing any

---

[6]See Docket Entry No. 135.

more federal signs.

The court denied the motion to dismiss and provided the following explanation:

The Court finds, <u>inter alia</u>, that a case or controversy remains because Kane County admits that at least 39 County road signs are posted on federal lands that TWS alleges are closed to public motor vehicle use under federal land management plans. The Court also finds that Kane County failed to meet its burden of demonstrating that TWS's claims concerning Kane County Ordinance 2005-03 were moot, given statements and deposition testimony by Kane County commissioners concerning the enactment of off-highway vehicle legislation. Kane County failed to show that "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." <u>City of Mesquite v. Aladdin's Castle, Inc.</u>, 455 U.S. 283, 289 n.10 (1982) (citation and quotation omitted).

(Oct. 30, 2007 Order (Dkt # 172).)

**C.    Motions Now Before the Court**

Now this matter comes before the court on TWS's Motion for Summary Judgment against the County. TWS seeks a court declaration that the 2005 Ordinance violated the Supremacy Clause of the United States Constitution. TWS also seeks injunctive relief that would, generally speaking, require the County (1) to remove County road signs that conflict with federal land management plans or federal law; and (2) to refrain from enacting any further ordinance, posting signs or otherwise purporting to manage, maintain, improve or open to vehicle use any route or area closed to such use by federal law until Kane County proves in a court of law that it holds a valid R.S. 2477 right-of-way.[7]

The County, in response to TWS's Motion for Summary Judgment, filed a motion for

---

[7]In a supplemental brief, after the record had been developed during briefing and during the hearing on the motion for summary judgment, TWS narrowed its initial request for relief. (<u>See</u> TWS's Supplemental Mem. (Dkt # 197).)

6

stay or dismissal under Federal Rule of Civil Procedure 56(f).  Still, despite its 56(f) Motion, the County filed a memorandum in opposition to TWS's Motion for Summary Judgment.  The County also filed a Motion to Strike two exhibits submitted by TWS in support of its motion for summary judgment.  (Compare Pls.' Mot. Summ. J. (Dkt # 175) to Pls.' Supplemental Mem. Concerning Injunctive & Declaratory Relief (Dkt # 197).)

And the day before the court heard argument on TWS's Motion for Summary Judgment, Kane County filed a Motion for Partial Summary Judgment, in which it requested that the court "grant partial summary judgment finding Kane County road number KCR50 - K5000, a.k.a., the Skutumpah Road . . . and Kane County road number KCR971 - K1037, a.k.a., the Windmill Road . . . to be Kane County and State of Utah public highways crossing valid existing rights-of-way granted by Congress."  (Defs.' Mot. Partial Summ. J. (Dkt # 192) at 2.)

## II.  FACTUAL BACKGROUND[8]

### A.    Federal Agencies' Management of Public Land in Kane County, Utah

There are many acres of federal land in Kane County, located in southern Utah. According to the First Amended Complaint, the U.S. Bureau of Land Management (BLM) manages about 1.6 million acres of the land and the National Park Service (NPS) about 400,000 acres in the County.  Four specific areas of federal land are at issue here.[9]

-----

[8]There is no genuine issue of material fact.  The relevant facts are taken from the parties' briefs.

[9]Although TWS also initially sought relief concerning Orderville Canyon WSA, Parunuweap WSA, Zion National Park, and Bryce Canyon National Park, TWS has since withdrawn its request for relief concerning these federal lands.  (See TWS's Supplemental Mem. (Dkt # 197) at 3 n.3 ("TWS does not seek relief concerning the following additional areas where Kane County insists that no conflict exists between existing federal management plans and the County's 1996 map, including . . . the Parunuweap Wilderness Study Area and the Orderville

First, there is the Grand Staircase-Escalante National Monument ("Monument").

President Clinton designated the 1.7 million-acre Monument in 1996.  See Proclamation No.

6920, 61 Fed. Reg. 50223 (Sept. 18, 1996).  BLM manages the Monument based on its authority

under the Federal Land Policy and Management Act of 1976 (FLPMA)[10] and based on its

November 1999 Grand Staircase-Escalante National Monument Management Plan [hereinafter

"Monument Plan"], which became effective in February 2000.  See 65 Fed. Reg. 10819-10821

(Feb. 29, 2000).  See also, e.g., 43 U.S.C. § 1732(a) ("The Secretary [of Interior] shall manage

the public lands . . . in accordance with the land use plans developed by him under section 1712

of this title[.]").

Then there is the Paria Canyon-Vermillion Cliffs Wilderness, also managed by BLM.

Congress designated this area as a wilderness in 1984.  See Arizona Wilderness Act of 1984,

Pub. L. 98-406, 98 Stat. 1485 (Aug. 28, 1984).

The third area is a wilderness study area (WSA) called Moquith Mountain WSA.  In

1980, after conducting a wilderness inventory, BLM designated the Moquith Mountain WSA

under authority of FLPMA Section 603(a), as codified at 43 U.S.C. § 1782.  See 45 Fed. Reg.

75602-75603 (Nov. 14, 1980) (final wilderness inventory decision designating the Moquith

Mountain WSA).  FLPMA Section 603(c) requires BLM to manage WSA's "so as not to impair

_____

Canyon Wilderness Study Area."); id. at 2-3 (requesting "that this Court accept the County's
judicial admission that no Kane County roads exist within Zion National Park or Bryce Canyon
National Park.").)  Because it appears there is no conflict with federal management of these
areas, the court will not address them in this Order.

    [10]BLM manages public lands (other than designated wildernesses) according to the
Federal Land Policy & Management Act of 1976 (FLPMA), 43 U.S.C. § 1701 et seq., Pub. L.
No. 94-579, 90 Stat. 2743 (Oct. 21, 1976).

the suitability of such areas for preservation as wilderness" and to, "by regulation or otherwise[,] take any action required to prevent unnecessary or undue degradation of the lands and their resources or to afford environmental protection." 43 U.S.C. § 1782(c).

The fourth area of land at issue consists of the portions of Glen Canyon National Recreation Area (NRA) that lie within the borders of Kane County. Congress established the Glen Canyon NRA in 1972. See An Act to establish Glen Canyon National Recreation Area in the States of Arizona and Utah, Pub. L. No. 92-593, 86 Stat. 1311 (Oct. 27, 1972). NPS manages this land through a delegation from Congress. See National Park Service Organic Act, as amended, codified at 16 U.S.C. § 1 et seq.

Each area of land is either totally closed to off-highway vehicle (OHV)[11] use or is only open to such use in limited areas designated by the managing federal agency.[12] See Pt. III.C.4, infra.

**B.    R.S. 2477 Rights-of-Way and Valid Existing Rights**

The County contends that it has "valid existing rights," that is, rights-of-way through federal land which Congress granted many years ago.[13] The basis for the County's assertion of

---

[11]OHVs are the same as off-road vehicles (ORVs).

[12]Kane County takes issue with TWS's alternating use of "OHV" and "motor vehicle" in its pleadings, contending that the term "motor vehicle" impermissibly expands the scope of TWS's First Amended Complaint, which focused on OHV travel. (See Defs.' Mem. Opp'n at 2, 6, 32-33.) The distinction is not relevant to the court's analysis because many of the binding agency road closures and travel restrictions at issue here apply to public motor vehicle travel, a category of which OHV travel is a subset. Moreover, the County essentially admitted that motor vehicles other than OHV's (such as "street legal cars, trucks and jeeps") are allowed on the alleged County roads as well. (See Defs.' Mem. Supp. Mot. Dismiss (Dkt # 30) at 38-39.)

[13]See, e.g., FLPMA § 701(h), Pub. L. 94-579, Title I, § 701, Oct. 21, 1976, 90 Stat. 2744 ("All actions by the Secretary concerned under this Act [FLPMA] shall be subject to valid

ownership in the roads on federal land is the 1866 federal statute known as "R.S. 2477."  See Act

of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253, codified at 43 U.S.C. § 932, repealed by Federal

Land Policy & Management Act of 1976 (FLPMA), Pub. L. No. 94-579 § 706(a), 90 Stat. 2743.

See also Southern Utah Wilderness Alliance v. BLM, 425 F.3d 735 (10th Cir. 2005) (describing

background and history of R.S. 2477).

Through R.S. 2477, Congress granted "'the right of way for the construction of highways

over public lands, not reserved for public uses.'"  Id. at 740 (quoting R.S. 2477).  Although

Congress repealed R.S. 2477 in 1976 with the enactment of FLPMA, the statute continues to be

relevant because it remains in effect for rights-of-way that were in existence before 1976.  After

FLPMA, "[t]here could be no new R.S. 2477 rights of way after 1976.  But even as Congress

repealed R.S. 2477, it specified that any 'valid' R.S. 2477 rights of way 'existing on the date of

approval of [FLPMA]' would continue in effect. . . . [FLPMA] thus had the effect of 'freezing'

R.S. 2477 rights as they were in 1976."  Id. at 741.

Over the years, changing federal land management law and policy (e.g., FLPMA), which

"instituted a preference for retention of the lands in federal ownership, with an increased

emphasis on conservation and preservation," generated a conflict with local governments in the

West that claimed the right to use and maintain R.S. 2477 rights-of-way on federal land within

their boundaries.  Id.  The R.S. 2477 dispute has been hotly contested for several years, with

_____

existing rights.");  Monument Plan at 46 ("Any route not shown on Map 2 is considered closed
upon approval of this Plan, subject to valid existing rights.");  Arizona Wilderness Act of 1984,
Pub. L. No. 98-406, § 302(a), 98 Stat. 1493 ("Subject to valid existing rights, each wilderness
area designated by this title [including Paria Canyon-Vermillion Cliffs Wilderness] shall be
administered by the appropriate Secretary in accordance with the provisions of the Wilderness
Act").

counties in southern Utah (including Kane County) battling federal land management agencies

over their claimed R.S. 2477 rights-of-way.  The actions by Kane County, which are described

below, represent Kane County's attempt to assert and protect its claimed land use rights.

**C.**     **Kane County's Actions**

     **1.**     **Sign Removal in 2003**

In 2003, Kane County Commissioners had a dispute with Monument managers over

BLM's placement of blue stake road closure signs on the County's claimed R.S. 2477 rights-of-

way in the Monument.  In a letter to the manager of the Monument, Kane County Commissioners

made the following statement:

> The monument road number signs are a clear manifestation and implementation
> of the restrictions ostensibly implemented with the approval of the monument
> plan on November 15, 1999.  The federal numbering system, therefore, conveys
> the impression of federal ownership and control of county asserted roads and
> closes travel on roads not numbered by the BLM.  The federal road numbers also
> conflict with the current county road numbering system that has been in place for
> several years.  The ATV/motorcycle restrictive signs are inconsistent with county
> policy regarding vehicle travel on county roads and conveys a legal ability of the
> BLM to place restrictions on those roads.  The cross-country restriction signs are
> not an issue in this matter as they do not conflict with the rights of the county.

(Mar. 10, 2003 Letter from Kane County Commissioners to BLM's Manager of the Monument at

1-2, attached as Ex. J to Second Aff. of Kane County Comm'r Mark W. Habbeshaw (which is

Ex. 5-a to Defs.' Opp'n Mem.).)

In the summer of 2003, County personnel removed 31 of those BLM blue stake signs.

They then delivered the signs to the Monument Manager's office in Kanab, Utah, along with

Kane County Commission's "Notice to Remove [Monument] Signs Restricting Public Travel on

Kane County Roads."  (Second Aff. of Habbeshaw ¶¶ 17-22.)  In the "Notice," the County

asserted that BLM signs "are obstructing public access upon county roads in violation of state law.  These [closure] conditions also fail to respect the rights of the dominant estate regarding rights-of-way granted to the State of Utah and to Kane County under Revised Statute 2477." (Aug. 13, 2003 Letter from County Comm'n to Monument Manager Dave Hunsaker, attached as Ex. K to Second Aff. of Habbeshaw.)

Apparently, there has been no further removal of BLM signs by Kane County personnel. And, according to Defendant Mark Habbeshaw, "I know that Kane County Board of Commissioners does not intend to authorize Kane County to remove any more federal signs as was done in 2003."  (Second Aff. of Habbeshaw ¶ 24.)

## 2.       Enactment of 2005 Ordinance

In August 2005, Kane County passed the "Ordinance to Designate and Regulate the Use of Off-Highway Vehicles . . . ."  Kane County Ordinance 2005-3 (attached as Ex. 11 to Pls.' Mem. Supp. Mot. Summ. J.).  In the Ordinance, the County claimed "the right and ownership of all Class B and Class D roads designated on the County Road System" and "designated all Class B and Class D roads as open, unless designated closed to off-highway vehicle (OHV) use . . . ."[14] (Id.)  The Ordinance borrowed from Utah State Code section 41-22-2 to define OHVs as motorcycles, snowmobiles, and all-terrain vehicles (ATVs) including motor vehicles that are

---

[14]Utah statutory law created the designations "class B road" and "class D road. " According to Utah code, class B roads are county roads.  A class D road is "any road, way, or other land surface route that has been or is established by use or constructed and has been maintained to provide for usage by the public for vehicles with four or more wheels that is not a class A, class B, or class C road under this title."  Utah Code Ann. § 72-3-105(1).  A class D road can be a right-of-way obtained through R.S. 2477 by the State of Utah and the county, who, according to State code, "have joint undivided interest in the title[.]" § 72-3-105(3).

"designed for or capable of travel over unimproved terrain."  Utah Code Ann. § 41-22-2(3)(a);
Ordinance § 1.

The basis for the County's assertion of ownership of the Class D roads over federal land
is R.S. 2477.  According to Kane County, the County Road System includes routes on federal
land, as depicted in a map entitled "Map Commissioned By: Kane County Commission October
18, 1996" (the "1996 map").[15]  (See Ex. 16 to TWS's Mem. Supp. Mot. Summ. J.; Jan. 30, 2006
Aff. of Mark Habbeshaw ¶ 10 ("Utah and Kane County Class B and D roads are shown and
identified by segment number on" the 1996 map) (attached as Ex. 17 to TWS's Mem. Supp.).)

The Ordinance authorized OHV use "on the County Road System as posted by sign or
designated by map or description as open to off-highway vehicle use by the County."  Ordinance
§ 1.  According to the Ordinance, the County could accomplish such designation by
"(a) provid[ing] a map or description showing or describing land, trails, streets, or highways open
to OHV use; or (b) post[ing] signs designating lands, trails, streets, or highways open to OHV
use."  Id.

The Ordinance does not identify or incorporate a specific map that depicts the opened
roads.  The County did, however, publish the 1996 map, which Kane County Commissioner
Mark Habbeshaw acknowledged depicted "all Class B and Class D" roads in the County.  (June
7, 2007 Dep. of Mark W. Habbeshaw at 131 (attached as Ex. 7 to TWS's Mem. Supp.).)  Mr.

_____

[15]Although the parties disputed whether the 1996 map replaced the 1978 maps prepared
by the County and relied on by TWS in its briefs, TWS has since agreed that the 1996 map
should govern in this dispute.  (See Pls.' Supplemental Mem. (Dkt # 197) at 2 ("Given Kane
County's repeated assurances that it interprets the Ordinance as affecting only routes displayed
on the 1996 map, . . . TWS recommends this Court tailor its relief to the 1996 map.").)

Habbeshaw also stated that the Ordinance "opened all Kane County Transportation System roads to ATV travel."  (Id. at 130.)

The 1996 map displays as R.S. 2477 roads numerous routes within the boundaries of the Monument that do not appear at all on Map 2 of the Monument Plan, or that do not appear on Map 2 as routes open to public motor vehicle travel.  It also shows alleged County roads that lie within the boundaries of the Moquith Mountain WSA, the Paria Canyon-Vermillion Cliffs Wilderness Area, and the Glen Canyon NRA.  The Ordinance and 1996 map designate those roads as open.  But in those areas, BLM and NPS have ordered that the very same roads on the 1996 map are either closed to OHV travel or closed to all public motor vehicle travel.  See Pt. III.C.4., infra.

Also, as described below, the County posted Kane County Road signs with OHV decals at the site of some of the routes in question.

### 3.        Placement of Kane County Road Signs With OHV Decals

In early 2005, Kane County officials posted County road numbering signs on a substantial number of alleged R.S. 2477 routes within the Monument.  Officials also posted signs on other BLM lands, including a sign within the Moquith Mountain WSA.  The signs were brown stakes containing County road numbers and some had OHV decals indicating the route was open to OHV travel.

Later, County officials removed some of those signs and all of the OHV decals.  But it is undisputed that 39 signs remain in place in the Monument on routes that Map 2 of the Monument Plan does not designate as open.  According to Mr. Habbeshaw, the purpose of the signs is "to assist the public in finding their way [along the roads] within the county and beyond [with a

motor vehicle], to facilitate health, safety, and welfare responsibilities of the county [for example, search and rescue], and to ultimately delineate between roads operated by different entities [such as BLM]."  (June 2007 Habbeshaw Dep. at 58-59, 79;  Second Aff. of Habbeshaw (Dkt # 136-23) ¶ 31.)

### III.  ANALYSIS

In its Motion for Summary Judgment, TWS contends that Kane County's Ordinance and related actions conflict with and are preempted by federal laws that regulate OHV use on federal land.  Before the court addresses the merits of TWS's Motion, the court will address Kane County's two procedural motions.

### A.    Kane County's 56(f) Motion

Along with an opposition to TWS's Motion for Summary Judgment, Kane County filed a Rule 56(f) motion asking the court to dismiss, or delay decision on, the Plaintiffs' motion because the County purportedly needs certain discovery to establish disputed issues of material fact.  The Federal Rules of Civil Procedure provide that:

> If a party opposing [a summary judgment] motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion [for summary judgment]; (2) order a continuance to enable affidavits to be obtained, depositions taken, or other discovery to be undertaken; or (3) issue any other just order.

Fed. R. Civ. P. 56(f) (emphasis added).

The County, through an affidavit of its counsel, says that the following discovery is necessary:

> 1) identifying the factual basis for plaintiffs' reliance on the 1978 [County road] maps as opposed to Kane county's 1996 [road] map; 2) identifying the specific roads at issue under the proper map, as the 1978 maps and the 1996 map cannot

be accurately reconciled; 3) learning the nature and current uses of each such road challenged by the plaintiffs, including whether "map error" is involved; 4) investigating the facts and circumstances supporting plaintiffs' allegation that a particular road is closed, including the position of the non-party federal land manager; 5) investigating the historical and continuing uses of each road at issue; and 6) responding with the evidence supporting Kane County's and the State of Utah's ownership of each particular road that plaintiffs have yet to show to be at issue.

(56(f) Aff. of Shawn Welch (Dkt # 183) ¶ 17.)

As the court noted at the beginning of the hearing on the motions, the court is denying the 56(f) motion[16] because the County has not met its burden under Rule 56(f).  The information Kane County claims it must obtain is either irrelevant (i.e., the facts to be obtained are not "essential to justify" the County's opposition) or is in the hands of the County already.

For instance, Item 1 in the above-quoted list has already been resolved.  The Plaintiffs explained the reason in their reply to the 56(f) motion:  "TWS already has explained that it relied upon the 1978 maps because Kane County offered them to the Tenth Circuit as relevant County road maps in earlier litigation" (Pls.' Reply Mem. (Dkt # 188) at 12.)

Concerning Item 2, there is no need to identify specific roads "at issue" because the court has BLM's and National Park Service's maps of road closures on federal land in Kane County.  Until Kane County establishes its R.S. 2477 rights-of-way in a court of law, all of the roads for which use is restricted by the federal agencies are "at issue."

Items 3 and 4 relate to the County's defense that BLM and NPS have since changed the road designations that TWS relies on and are not enforcing closures of roads for which the

---

[16]The court stated, "I'll explain it in more detail in my written order – but I am going to deny the 56(f) motion [because] I believe that the materials requested really are not relevant for the motion pending in front of me."  (Hr'g Tr. 3, Apr. 14, 2008.)

County claims it has R.S. 2477 rights-of-way.  But, as explained in more detail below, evidence of unofficial changes to official road closures and internal agency policy decisions not to enforce certain closures in light of R.S. 2477 disputes are not relevant to the court's analysis.    Similarly, the County's "map error" statement (the County contends that the road closure map in the Nov. 1999 Grand Staircase-Escalante National Monument Management Plan is inaccurate and out of date) incorrectly assumes that the court has authority to reject the map (created after public notice and comment) in favor of unofficial statements concerning agency actions (such as posting road closure signs or negotiating with the County about specific roads) or inactions (deciding not to enforce road closures).

Items 5 and 6 relate to the County's claim that it has valid R.S. 2477 rights in the roads. But that information is not relevant because the court does not need to make an R.S. 2477 determination to decide the preemption issue.

For the foregoing reasons, Kane County's Rule 56(f) Motion is DENIED.

**B.     Kane County's Motion to Strike**

Kane County filed a Motion to Strike Exhibits attached to TWS's Memorandum in Support of its Motion for Summary Judgment on the basis that they are inadmissible hearsay. Specifically, the County objects to TWS's Exhibit 6, which is an October 5, 2006 letter to Kane County from Henry Bisson, Acting State Director for BLM's Utah office, and TWS's Exhibit 9, which is an April 26, 2005 letter to Kane County from Sally Wisely, State Director for BLM's Utah office.

The County contends that the letters are statements by non-party declarants that TWS is offering for the truth of the matter asserted (that is, that the County actions conflict with BLM's

17

Monument Management Plan and travel restrictions on roads within the Monument).  Because

the court finds that the letters are not material to the decision (a conflict is apparent from other

material in the record), the court DENIES the Motion to Strike as moot.

**C.    TWS's Motion for Summary Judgment**

     **1.    Standard of Review**

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(c);  see Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670

(10th Cir. 1998).  The court must construe all facts and reasonable inferences therefrom in the

light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986);  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d

1238, 1241 (10th Cir. 1990).

     **2.    The Supremacy Clause and Law of Federal Preemption**

The United States Constitution's Supremacy Clause declares that "[t]his Constitution, and

the laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme

Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the

Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, Cl. 2.

To prevail on its claim that the County violated the Supremacy Clause, TWS must establish that

the County's Ordinance and actions actually conflict with federal statutes or federal regulations.

English v. General Elec. Co., 496 U.S. 72, 78-79 (1990) (holding that conflict preemption is

found when "state law stands as an obstacle to the accomplishment and execution of the full

purposes and objectives of Congress"); Choate v. Champion Home Builder Co., 222 F.3d 788,

792 (10th Cir. 2000) (same).

### 3.     Ownership and Management of Federal Land

The Property Clause of the United States Constitution provides that "Congress shall have

Power to dispose of and make all needful Rules and Regulations respecting the Territory or other

Property belonging to the United States." U.S. Const., Art. IV,  § 3, cl. 2.

> Absent consent or cession a State undoubtedly retains jurisdiction over federal
> lands within its territory, but Congress equally surely retains the power to enact
> legislation respecting those lands pursuant to the Property Clause.  And when
> Congress so acts, the federal legislation necessarily overrides conflicting state
> laws under the Supremacy Clause.

Kleppe v. New Mexico, 426 U.S. 529, 543 (1976).  See also Wyoming v. United States, 279 F.3d

1214, 1227 (10th Cir. 2002) (noting that the policies and objectives encompassed by the

legislation, as well as the actual statute, preempt conflicting state laws).

Using its power under the Property Clause, Congress enacted the Federal Land Policy and

Management Act of 1976 (FLPMA), 43 U.S.C. § 1701 et seq., delegating to BLM the task of

managing the public lands within its jurisdiction, including the Grand Staircase-Escalante

Monument and Moquith Mountain WSA.  Similarly, Congress enacted the National Park Service

Organic Act, as amended, at 16 U.S.C. § 1 et seq., from which NPS obtains its authority to

manage the national park lands, including Glen Canyon NRA.  And under the same authority,

Congress created the Paria Canyon-Vermillion Cliffs Wilderness.  See Arizona Wilderness Act

of 1984, Pub. L. 98-406, §§ 301(a)(7) & 302(a), 98 Stat. 1485, 1493 (Aug. 28, 1984) (requiring

lands in Paria Canyon-Vermillion Cliffs Wilderness to "be administered . . . in accordance with

the provisions of the Wilderness Act"); 16 U.S.C. § 1133(c) (Wilderness Act § 4(c), generally

prohibiting permanent and temporary roads and the use of motor vehicles within designated

wilderness).

Through delegations by Congress and Presidential Proclamation (for the Monument),

BLM and NPS each have promulgated regulations and issued land management plans to govern

the management and use of the public lands within their jurisdictions.  These have the same

preemption effect that the statutes setting forth land management objectives and policies have.

### 4.      Conflicts With Federal Lands at Issue

Having reviewed the relevant federal statutes, regulations, and land management plans in

light of Kane County's actions, the court holds that the Ordinance and the County's actions

purporting to manage routes on federal land actually conflict with federal law.  See Wisconsin

Pub. Intervenor v. Mortier, 501 U.S. 597, 605 (1991) (holding that, under the Supremacy Clause,

local ordinances are subject to same scrutiny applied to statewide laws).  That is, the Ordinance

and the County's related actions are an obstacle to the accomplishment and execution of the full

purposes and objectives of FLPMA, the NPS Organic Act, the Wilderness Act, the Arizona

Wilderness Act of 1984, implementing regulations of BLM and NPS, as well as agency land

management plans and other formal agency directives that close the lands to OHV use based on

authority delegated by those statutes.

The court makes this finding (described in more detail below) despite the County's

asserted R.S. 2477 rights-of-way,[17] the validity of which have not been adjudicated in a court of

_____

    [17]In addition to its assertion that the County holds valid existing rights in the roads on
federal land within County borders, the County raised other defenses to TWS's motion.  It claims

law (that is, there are no "valid existing rights" to consider here).  Certainly the County correctly

notes that federal land management agencies must manage the land without disturbing "valid

existing rights."  But this truism does not help the County, as the court has already found that the

County has not established any valid existing rights.  See Wilderness Soc'y, 470 F. Supp. 2d

1300, 1305-06 (D. Utah 2006).  Furthermore, as the court noted in an earlier opinion, the

conclusion in this case

> need not rest on a determination regarding the veracity of any [R.S. 2477] claims
> the County might have.  Rather, the Court need only recognize that the
> presumption on federal land is that ownership and management authority lies with
> the federal government and that any adverse claimant, like the County here
> perhaps, is not entitled to win title or exercise unilateral management authority
> until it successfully has carried its burden of proof in a court of law.

Id. at 1306.  See also SUWA v. BLM, 147 F. Supp. 2d 1130, 1136 (D. Utah 2001) ("'[T]he

established rule [is] that land grants are construed favorably to the Government, that nothing

passes except what is conveyed in clear language, and that if there are doubts they are resolved

for the Government, not against it.'  This principle applies to the determination of R.S. 2477

rights-of-way.") (internal citations omitted).

The court is not persuaded by the County's assertion that it has a valid existing right in

the Skutumpah Road, which "vested without formal action."  (Defs.' Opp'n Mem. at 36.)  First,

for purposes of analysis in this case, the court does not recognize any right that the County

contends "vested without formal action."  Second, the County stretches the meaning of remand

---

that the Plaintiffs do not have standing, that the Plaintiffs do not seek "true prospective equitable
relief" but rather seek to take property from the government, and that the county is immune from
suit.  The court has already rejected these defenses and will not address them further.  See
Wilderness Soc'y, 470 F. Supp. 2d 1300 (D. Utah 2006).

language in <u>SUWA v. BLM</u>, 425 F.3d 735 (10th Cir. 2005), offering as proof the appellate

court's statement ordering the district court to determine, among other things, "whether Kane

County exceeded the scope of its right of way with respect to the Skutumpah Road." <u>Id.</u> at 788.

Given the context of the entire opinion, and without further factual analysis from the Tenth

Circuit, the court is hard pressed to reasonably infer from that statement that Kane County has

established an R.S. 2477 property right in the Skutumpah Road in a court of law.  Furthermore,

although the district court accepted BLM's determination that the Skutumpah Road was a valid

R.S. 2477 right-of-way in an earlier decision, the court did so under a standard later rejected by

the Tenth Circuit.  That is, the court reviewed BLM's decision under the federal Administrative

Procedure Act rather than making a de novo determination under federal law that borrows

heavily from state common law.  <u>See id.</u> at 768; <u>SUWA v. BLM</u>, 147 F. Supp. 2d 1130, 1134,

1136-37, 1145 (D. Utah 2001).  Lastly, the district court on remand did not make a final decision

on the merits.  Instead, it dismissed the case for lack of jurisdiction after the federal defendants

withdrew their opposition to the County's R.S. 2477 claims.  (<u>See</u> Aug. 30, 2006 Order, <u>SUWA</u>

<u>v. BLM</u>, Case No. 2:96-CV-836-BSJ (D. Utah), Docket Entry No. 493.)  From this, and the lack

of any other evidence from the County, the court concludes that no R.S. 2477 determination has

been made by a court of law concerning the Skutumpah Road.

     Consequently, the R.S. 2477 law does not help the County in this suit.  As described in

more detail below, the court finds that the Ordinance and County's actions are in direct conflict

with federal land management laws, and their underlying policies and objectives.

     a.    <u>Grand Staircase-Escalante Monument</u>

BLM manages the Monument according to the Presidential Proclamation creating the

Monument, a congressional mandate set forth in FLPMA, and the Monument Plan, which was generated based on the mandate in the Proclamation.  See Proclamation No. 6920, 61 Fed. Reg. 50223, 50225 (Sept. 18, 1996).  According to the Proclamation, BLM is to manage "this unspoiled natural area" to protect the "scientific and historic resources" set forth in the Proclamation, and "pursuant to applicable legal authorities" such as FLPMA and its implementing regulations.  Id.

BLM issued a land management plan for the Monument in 1999.  The Monument Plan is the guiding federal legal authority for management of the Monument.

In the Monument Plan, BLM designated a transportation route system for the Grand Staircase-Escalante Monument, as depicted in the Plan's Map 2.  (See Monument Plan Map 2, attached as Ex. 2 to Pls.' Mem. Supp. Mot. Summ. J.; Monument Plan at 46, attached as Ex. 1 to Pls.' Mem. Supp. Mot. Summ. J.)  See also 43 C.F.R. § 8341.1(c) ("The operation of off-road vehicles is prohibited on those areas and trails closed [by BLM] to off-road vehicle use.").  According to the Monument Plan, "[t]he Transportation map (Map 2 in the back of the document) shows routes that will be open for public use and those available for administrative use only . . . . Any route not shown on Map 2 is considered closed upon approval of this Plan, subject to valid existing rights."  (Monument Plan at 46 (emphasis added).)  BLM also emphasized that although "[s]ome government entities may have a valid existing right to an access route under Revised Statutes (R.S.) 2477," until such right is established, "the transportation system described in the Approved Plan will be the one administered in the Monument."  (Id.)

According to the County, BLM is not enforcing the Monument Plan as written, so relying

on the Monument Plan's restrictions is not proper.  (See Defs.' Opp'n Mem. at 6, 16, 29.)  The

County also contends that the court may not rely on Map 2 because the map is inaccurate (this is

the County's "map error" argument) and that, at a minimum, the discrepancies create a genuine

issue of material fact.  (Id. at 4-6, 9, 16, 29)  The court disagrees.

The Monument Plan is a binding legal document, at least for the route designations.

According to BLM's Off-Road Vehicles regulations, which apply to the Monument's

transportation system,[18] "[t]he approval of a resource management plan, plan revision, or plan

amendment constitutes formal designation of off-road vehicle use areas.  Public notice of

designation or redesignation shall be provided through the publication of the notice" in the

federal register.  43 C.F.R. § 8342.2(b) (emphasis added).  And any change to the designation

(i.e., plan amendment) must be made through the formal resource management planning process,

which requires public notice and comment.  43 C.F.R. § 1610.5-1.  In other words, the agency

actions and documents cited by Kane County to demonstrate the invalidity of Map 2 (none of

which satisfy the public notice and comment procedures) do not change the legal status of the

route designations in the Monument Plan.

Kane County also contends that Norton v. Southern Utah Wilderness Alliance (SUWA),

542 U.S. 55 (2004), precludes entering an injunction with the relief requested by TWS because

such relief would interfere with BLM's and NPS's discretionary authority to manage the land.

(See Defs.' Mem. Opp'n at 20.)  In Norton v. SUWA, the Court held that land management plans

---

[18]See 65 Fed. Reg. 10819, 10821 (Feb. 29, 2000) ("The Approved [Monument Management] Plan designates the route system for the Monument.  Cross-country motorized travel will be prohibited in accordance with 43 CFR 8340 Off-Road Vehicle (OHV) regulations.").

are not binding on the agency (that is, they may not be used to compel the agency to act according to standards in the plan) because land use plans are typically policy determinations, not implementation decisions.  The Court reasoned that compelling agency action based on the land use plan (which the Court characterized as a tool setting forth goals), would entangle the judiciary in "abstract policy disagreements which courts lack both expertise and information to resolve," thereby improperly "injecting the judge into day-to-day agency management."  Norton, 542 U.S. at 2381.

     Norton v. SUWA is distinguishable for two reasons.  First, the requested injunctive relief applies to the County, not BLM or NPS, neither of which is a party to this action.  The injunction does not preclude the federal agencies from managing the lands as they see fit under their land management plans.  If BLM, for example, decides for its own land management purposes that a particular route is an R.S. 2477 right-of-way, it can manage the land in accordance with its finding.  See SUWA v. BLM, 425 F.3d at 757 (stating that court's holding "does not mean that the BLM is forbidden from determining the validity of R.S. 2477 rights of way for its own purposes" through administrative determinations, which are useful for "limited purposes" such as "the agency's internal land-use planning purposes") (internal citations and quotation marks omitted).  But that does not give the County a valid existing right in the route.  Id. (noting that BLM administrative determinations regarding validity of R.S. 2477 rights are not binding, final agency action, and holding that BLM does not have primary jurisdiction to make such a binding determination).  BLM's hands are not tied, but Kane County will not be able to post signs or pass ordinances regulating the route or declaring the route open to motor vehicle (or OHV) travel if it is not open under federal agency rules.

Second, the Supreme Court noted an exception to its finding in <u>Norton v. SUWA</u> that "a land use plan is not ordinarily the medium for affirmative decisions that implement the agency's project[ions]." 542 U.S. at 2382. The Court stated, "The exceptions 'are normally limited to those required by regulation, such as designating [ORV] areas, roads, and trails (see 43 CFR 8342).'" <u>Id.</u> at 2382 n.4. This case falls within that exception because the section of the Monument Plan setting forth transportation routes is a binding, legal requirement, as noted above.

In short, the court must rely on Map 2 and the transportation system set forth in the Monument Plan. Now, having established the legal framework, the court's remaining analysis is relatively straightforward.

Kane County has admitted that it placed at least "39 Kane County road numbering signs on roads [in the Monument] . . . that do not appear on Map 2 of the [Monument] Plan." (Defs.' Mem. Supp. Mot. Dismiss (Dkt # 136) at 16 (citing Aff. of Louis Pratt, Jr. ¶ 22).) Those signs remain, and their intended effect is "to assist the public in finding their way [along the roads] within the county and beyond [with a motor vehicle], to facilitate health, safety, and welfare responsibilities of the county [for example, search and rescue], and to ultimately delineate between roads operated by different entities [such as BLM]." (June 2007 Habbeshaw Dep. at 58-59, 79; Second Aff. of Habbeshaw (Dkt # 136-23) ¶ 31.) By placing the signs within the Monument, the County has encouraged, sanctioned, and facilitated public motor vehicle use of federal lands that BLM officially closed to protect the Monument's values as required by the Presidential Proclamation. The County's signs create a direct conflict with federal land management directives, in violation of the Supremacy Clause.

The same can be said for the Ordinance, which essentially relies on the County's 1996 map. The Ordinance declares certain roads open to OHV use, and roads depicted on the 1996 map lie within the Monument. But those roads do not match the roads open on Map 2 of the Monument Plan. The County's law is in direct conflict with federal law, in violation of the Supremacy Clause. See English v. General Elec. Co., 496 U.S. 72, 78-79 (1990) (holding that conflict preemption is found when "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"); United States v. Nye County, 920 F. Supp. 1108 (D. Nev. 1996) (holding that section of county's resolution claiming ownership of rights-of-way across national forest land and opening closed roads on federal lands violated the Supremacy Clause because no R.S. 2477 right-of-way had been established).

   b. Paria Canyon-Vermillion Cliffs Wilderness

Congress designated the Paria Canyon-Vermillion Cliffs Wilderness in 1984 based on the Wilderness Act of 1964, 16 U.S.C. §§ 1131-1136. See Arizona Wilderness Act of 1984, Pub. L. 98-406, 98 Stat. 1485 (Aug. 28, 1984). The purpose of the Wilderness Act is to

> secure for the American people of present and future generations the benefits of an enduring resource of wilderness. For this purpose there is hereby established a National Wilderness Preservation System to be composed of federally owned areas designated by Congress as "wilderness areas", and these shall be administered for the use and enjoyment of the American people in such manner as will leave them unimpaired for future use and enjoyment as wilderness, and so as to provide for the protection of these areas, the preservation of their wilderness character, and for the gathering and dissemination of information regarding their use and enjoyment as wilderness[.]

16 U.S.C. § 1131(a) (emphasis added).

When Congress designated the Paria Canyon-Vermillion Cliffs Wilderness, it generally prohibited permanent and temporary roads and use of motor vehicles within the area. See

Arizona Wilderness Act of 1984, Pub. L. 98-406, §§ 301(a)(7) & 302(a), 98 Stat. 1485, 1493

(Aug. 28, 1984) (requiring lands in Paria Canyon-Vermillion Cliffs Wilderness "be administered

. . . in accordance with the provisions of the Wilderness Act"); 16 U.S.C. § 1133(c) (Wilderness

Act § 4(c), generally prohibiting permanent and temporary roads and use of motor vehicles

within designated wilderness).  BLM manages and enforces that proscription through 43 C.F.R.

Part 6300 (Management of Designated Wilderness Areas), which prohibits building of temporary

or permanent roads and prohibiting use of motorized equipment, motor vehicles or other forms of

mechanical transport in designated wilderness.  See 43 C.F.R. §§ 6302.20(b) & (d).

The County declared Class B and Class D roads open to OHV use, issued its 1996 map,

and acknowledged that the two documents (the Ordinance and the 1996 map) opened all County

Class D roads to OHV use.  (See Habbeshaw Dep. at 130.)  The 1996 map displays two County

roads within the area, which was closed by Congress to public motor vehicle travel.  (See Aff. of

Louis Pratt, Jr. ¶ 33 (admitting routes on 1996 map are within Paria Canyon-Vermillion Cliffs

Wilderness Area); Apr. 2007 Second Aff. of Mark Habbeshaw ¶ 32 (same, identifying routes as

numbered 1180 and 1191 on the 1996 map).)  This created a direct conflict with the federal

management directives for the Paria Canyon-Vermillion Cliffs Wilderness, which prohibit motor

vehicle travel within the wilderness.

      c.    Moquith Mountain Wilderness Study Area

FLPMA requires BLM to manage WSA's "so as not to impair the suitability of such areas

for preservation as wilderness[.]"  43 U.S.C. § 1782(c).  The Moquith Mountain WSA is

governed by the Vermillion Management Framework Plan [hereinafter "Vermillion MFP"].  (See

Ex. 18 attached to Pls.' Mem. Supp. Mot. Summ. J.)

On July 7, 1998, BLM issued an emergency order restricting motor travel in the majority of the Moquith Mountain WSA to designated routes.  63 Fed. Reg. 37587 (July 13, 1998).  In 2000, BLM amended the Vermillion MFP to make the 1998 emergency order (with minor exceptions) permanent.  See 65 Fed. Reg. 19921 (Apr. 13, 2000).  Kane County has admitted that at least one route shown on the 1996 map in the WSA area (Windmill Road, # 971) has not been designated as open to public motor vehicle travel by BLM.  (See Pratt Aff. ¶ 30; 1996 map (road # 971 depicted above Coral Pink Sand Dunes State Park at intersection of Yellowjacket Road and Hancock Road in an area closed to OHV use);  Map of Moquith Mountain WSA OHV Closure Area, attached as Ex. 5 to Pls.' Supplemental Mem. (Dkt # 197).)

This is in direct conflict with the rules governing the Moquith Mountain WSA.

      d.    Glen Canyon National Recreation Area

NPS regulations, promulgated in accordance with the NPS Organic Act[19] and Executive Order No. 11644 (Feb. 8, 1972),[20] prohibit motor vehicle travel off NPS roads.  36 C.F.R. § 4.10(a).  Any routes[21] "designated for off-road motor vehicle use" must be established through

---

[19]NPS obtains its authority to manage the national park lands from the National Park Service Organic Act, as amended, at 16 U.S.C. § 1 et seq.

[20]The Executive Order requires the Secretary of Interior to develop administrative rules designating areas for use (or prohibitions on use) of off-road vehicles on public lands.

[21]There appears to be a deliberate use of "route" in lieu of "road."  Part of the R.S. 2477 dispute centers around what constitutes a "road" or "highway."   "Conservationists and federal land managers worry . . . that too loose an interpretation of R.S. 2477 will conjure into existence rights of way where none existed before, turning every path, vehicle track, or dry wash in southern Utah into a potential route for cars, jeeps, or off-road vehicles."  SUWA v. BLM, 425 F.3d 735, 742 (10th Cir. 2005). Apparently what some may characterize as travel on a road would be characterized by others as cross-country travel over unimproved areas containing wilderness characteristics or other features threatened by vehicular traffic of any kind.

"special regulations." 36 C.F.R. § 4.10(b). NPS has not issued any special regulations allowing designation of routes or areas for off-road motor vehicle use within the borders of Kane County for Glen Canyon National Recreation Area. See 36 C.F.R. Pt. 7 (2007) (special regulations for National Park System). Accordingly, no authorized OHV routes exist in NPS land at issue here.[22] (See also 1979 Glen Canyon NRA General Mgmt. Plan, at p. 5 & Map 2 [attached as Ex. 3 to TWS's Supplemental Mem. (Dkt # 197)] (designating road closures in NRA).)

The County has affirmed that its road system includes at least twenty routes within Glen Canyon NRA. (See Pratt Aff. ¶ 37.) TWS, in its supplemental brief, provided photos of the County's 1996 map depicting some of those roads. The photos show at least three routes – numbered 313, 328, and 697 – that the County declared open but that NPS closed, as shown on Map 2 of the NRA's General Plan. (Compare photo #4230004 9 [attached as Ex. 2 to TWS's Supplemental Mem. (Dkt # 197)] with Glen Canyon NRA General Mgmt. Plan Map 2 [attached as Ex. 3 to TWS's Supplemental Mem.].) The depiction of those roads, along with the Ordinance, create a direct conflict with NPS's management of the NRA.

**5.    Conclusion**

Given the direct conflicts noted above, the court finds that the County's Ordinance and actions opening routes on federal land that are closed by operation of federal law all violate the Supremacy Clause. For the foregoing reasons, the declaratory and injunctive relief requested by TWS, as specified below, is GRANTED.

---

[22]But see NPS Notice of Intent to Prepare an Environmental Impact Statement for an Off-Road Vehicle Management Plan for Glen Canyon NRA, 72 Fed. Reg. 50393 (Aug. 31, 2007) (noting that "ORV Management Plan/EIS may also form the basis for a special regulation pursuant to 36 CFR 4.10 to regulate ORV use at Glen Canyon NRA").

**D.**     **Kane County's Motion for Partial Summary Judgment**

Recently, Kane County filed a Motion for Partial Summary Judgment, in which it requested that the court "grant partial summary judgment finding Kane County road number KCR50 - K5000, a.k.a., the Skutumpah Road . . . and Kane County road number KCR971 - K1037, a.k.a., the Windmill Road . . . to be Kane County and State of Utah public highways crossing valid existing rights-of-way granted by Congress."  (Defs.' Mot. Partial Summ. J. (Dkt # 192) at 2.)

Kane County's Motion is problematic for three reasons.  First, the United States (which holds title to the public land absent a court adjudication that the County has a valid existing right under R.S. 2477) is not a party to this suit.  Second, TWS does not, nor can it, claim title to any alleged R.S. 2477 right-of-way.  Third, Kane County has not alleged the requisite claim under the Quiet Title Act of 1972 (Pub. L. No. 92-562).  See Block v. North Dakota, 461 U.S. 273, 286 (1983) (holding that Quiet Title Act is "the exclusive means by which adverse claimants [can] challenge the United States' title to real property"); Southwest Four Wheel Drive Ass'n v. BLM, 363 F.3d 1069, 1071 (10th Cir. 2004) (citing Block for same proposition in R.S. 2477 case); Kane County v. Kempthorne, 495 F. Supp. 2d 1143, 1159 (D. Utah 2007) (holding that because County's claim—i.e., federal agency road closures impinged on its R.S. 2477 valid existing rights—necessarily implicated questions of title, and because County failed to allege the requisite Quiet Title Act claim, claim was dismissed).  For these reasons, the County's Motion for Partial Summary Judgment is DENIED.

## ORDER

For the foregoing reasons, the court issues the following Order:

1.　　　Plaintiffs' Motion for Summary Judgment (Dkt # 175) is GRANTED.  The court ORDERS as follows:

　　　　a.　　The court DECLARES that Kane County violated the Supremacy Clause by posting signs along, or otherwise indicating as open, numerous routes that were closed to vehicle use by governing federal land management plan or federal law, including routes within the Grand Staircase-Escalante National Monument and Moquith Mountain Wilderness Study Area.

　　　　b.　　The court DECLARES that Kane County Ordinance No. 2005-03 violated the Supremacy Clause by purporting to open to vehicle use routes within the Grand Staircase-Escalante National Monument, Paria Canyon-Vermillion Cliffs Wilderness, Moquith Mountain Wilderness Study Area, and Glen Canyon National Recreation Area that are closed to vehicle use by the governing federal land management plan or federal law.

　　　　c.　　The court hereby ENJOINS the County and ORDERS that Kane County shall remove within twenty days of this Order those County road signs that conflict with federal land management plans or federal law as identified in this Order.  Kane County shall remove those signs indicating as open those routes closed under federal land management plan or federal law.  At a minimum, Kane County shall remove the 39 signs the County admits are on routes that do not appear on Map 2 of the Monument Management Plan and the sign the County admits is on a federally closed road within the Moquith Mountain WSA.

　　　　d.　　The court further ENJOINS the County and ORDERS that Kane County

32

shall not adopt ordinances, post signs, or otherwise purport to manage or open to vehicle use any route or area closed to such use by governing federal land management plan or federal law. Further, Kane County shall take no other action to invite or encourage vehicle use on any route or area closed to such use by governing federal land management plan or federal law.  Kane County is enjoined from any action described above relating to any route unless and until Kane County proves in a court of law that it possesses a right-of-way to any such route and establishes the proper scope of such right-of-way in a court of law.

2.      Kane County's 56(f) Motion (contained within its Opposition to the Motion for Summary Judgment) is DENIED.

3.      Kane County's Motion to Strike Exhibits (Dkt # 184) is DENIED AS MOOT.

4.      Kane County's Motion for Partial Summary Judgment (Dkt # 192) is DENIED.

DATED this 16th day of May, 2008.

BY THE COURT:

TENA CAMPBELL
Chief Judge